

**Signed: February 25, 2010**

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

GARY STEVEN DROCCO,

    Debtor.
_____/

No. 09-71696 TG
Chapter 13

**MEMORANDUM OF DECISION**

The motion of Edward and Trudy Ortega (the "Ortegas") for relief from the automatic stay in the above-captioned case came before the Court for a final evidentiary hearing on February 19, 2010. Appearances were stated on the record. At the conclusion of the hearing, the Court took the motion under submission. For the reasons stated below, the Court concludes that the motion should be granted.

**SUMMARY OF FACTS**

In May 1995, the debtor (the "Debtor") entered into a written installment land sale contract (the "Contract") with the Ortegas concerning certain real property located in Lafayette, California (the "Property"). The Contract provided for the lease of the Property to the Debtor with an installment purchase option. In July 1996, the Debtor exercised the purchase option and began making

monthly payments on the purchase price.  In the Contract, the Ortegas agreed not to encumber the Property as long as the Debtor was current in his monthly payments.  The Contract prohibited its recordation.

In 2002, while the Debtor was current, the Ortegas breached the Contract by placing two deeds of trust on the Property securing loans.  They did not obtain the Debtor's consent to do so or inform him of the loan transactions.  In December 2002, after learning of the encumbrances, the Debtor stopped making his monthly payments.  He filed an action against the Ortegas in Contra Costa Superior Court (the "Original Action"), seeking tort and contract damages and requesting declaratory and injunctive relief.

A jury trial was conducted in the Original Action on March 3, 2004.  The jury found that the Ortegas had breached the Contract but awarded the Debtor only $1 in damages.  In the judgment (the "Judgment"), the Debtor was given the right to purchase the Property by paying the purchase price in full.  The Debtor was given one week from entry of the Judgment to open an escrow and a relatively short period of time within which to close it.  The Ortegas were ordered to cooperate with the sale transaction.  The Debtor was given the right to petition the state court for assistance in the event the Ortegas failed to do so.

The Judgment provided that, in the event the Debtor failed to complete the purchase within the time provided, he would be deemed to have elected to continue purchasing the Property by making monthly payments.  However, the Contract was to be recorded, and the Ortegas were ordered to cooperate in this process.

2

Case: 09-71696    Doc# 56    Filed: 02/25/10    Entered: 02/25/10 14:02:52    Page 2 of 10

The Debtor was unable to obtain the loan required to purchase the Property within the time provided by the Judgment. He petitioned the court for more time, but the petition was denied. Accordingly, pursuant to the Judgment, he was deemed to have elected to continue making installment payments. The Debtor was unable to record the Contract because the Ortegas' signatures were not notarized. The Ortegas failed to cooperate in having the Contract recorded by having their signatures notarized. It does not appear that the Debtor petitioned the state court for assistance with this problem. However, given the Ortegas' lack of cooperation, the Debtor stopped making the monthly payments under the Contract.

In March 2008, the Debtor filed a second action against the Ortegas (the "Title Action") in state court. The complaint in the Title Action sought specific performance. It also sought a declaration that the secured creditor's interest in the Property was junior to the Debtor's interest. The Ortegas filed a demurrer to the complaint on the ground that the claims were barred by res judicata as a result of the Judgment. The demurrer was sustained without leave to amend. The Debtor appealed this ruling.

In December 2008, while the appeal was pending, the Ortegas filed an action against the Debtor (the "Ejectment Action"), seeking to evict him from the Property. The Debtor filed a demurrer to the Ejectment Action. When the demurrer was overruled, he filed an answer and a cross-complaint, asserting his equitable ownership rights to the Property. A trial was scheduled for July 2009. The Debtor was able to obtain a temporary stay of the trial from the

3

appellate court where the Title Action was pending. However, the stay was soon lifted, and a new trial date was set for December 2009. Before this trial could take place, the appellate court made its ruling in the Title Action. It affirmed the trial court's order to the extent that the order sustained the Ortegas' demurrer. It reversed the order to the extent the order denied the Debtor leave to amend the complaint.

The Debtor sought to have the Title Action and the Ejectment Action consolidated, but this effort was unsuccessful. He also unsuccessfully challenged the state court judge to whom the Ejectment Action had been assigned. Trial in the Ejectment Action was scheduled for mid-December 2009. The Debtor filed a chapter 13 petition on December 7, 2009, approximately one week before the trial. The Debtor testified at the final hearing on the motion for relief from stay that he filed for bankruptcy because he could not afford to pay his attorney to handle the trial in the Ejectment Action. He expressed the belief that, in bankruptcy, his attorney would be paid on a monthly basis from the payments he made to the chapter 13 trustee.

The Debtor filed a chapter 13 plan (the "Plan") with his bankruptcy petition. The Plan provides that the Debtor will pay the trustee $150 per month for 35 months.[1] In the 36th month, the last

---

[1] The Debtor is unemployed. His putative spouse was formerly employed but was laid off before the bankruptcy filing. She is currently receiving only $1,900 a month in unemployment compensation. This is the only source of payments for the Plan. The Debtor has represented that some years ago he assigned 75 percent of his interest in the Property to his putative spouse.

4

month of the Plan, the Debtor will make a $180,000 balloon payment to the chapter 13 trustee or as much as is necessary to pay off the Plan. The Plan provides that the balloon payment will be funded with the litigation proceeds of the Title Action and a legal malpractice action filed against the Debtor's attorney in the Original Action. The Debtor's debt to the Ortegas was to be paid from a sale or refinance of the Property after resolution of the litigation against them. Presumably, this would be accomplished during the 36 months of the Plan.

On February 16, 2010, the Debtor filed an adversary proceeding against the Ortegas and the secured creditor on the Property in bankruptcy court. Like the pending actions in state court, the adversary proceeding seeks a declaration of the nature, extent, and priority of the various interests in the Property, restitution, and specific performance. The complaint had not yet been served at the time of the final hearing.

## DISCUSSION

The Ortegas seek relief from the automatic stay to proceed with the trial in the Ejectment Action as soon as it can be rescheduled.[2] They base their motion for relief on 11 U.S.C. § 362(d)(1), which

---

The couple has a small child, and the Debtor is the caretaker of the child when his putative spouse is employed.

[2] At the final hearing, the Ortegas' counsel advised the Court that he intended to seek a resetting of the trial on a priority basis. He estimated that, on this basis, the trial would take place in a couple of months. Otherwise, the trial would be conducted in approximately six months.

5

provides that relief from stay may be granted for "cause."[3] They contend that "cause" for relief exists here because the bankruptcy petition was filed in bad faith: i.e., to stop the state court trial in the Ejectment Action. In support of this contention, they cite <u>In re Dixie Broadcasting, Inc.</u>, 871 F.2d 1033 (11th Cir. 1989) and <u>In re Chinichian</u>, 784 F.2d 1440 (9th Cir. 1986). Both cases, like this one, involvef bankruptcies filed after substantial litigation had been conducted in state court to resolve disputes about sales contracts.

In <u>Dixie Broadcasting</u>, the debtor, the owner of a radio station, attempted to renege on an agreement to sell the station to the owner of another radio station after receiving a better offer from a third party. The debtor filed a chapter 11 petition during a recess in the hearing on a motion for reconsideration, after the state court indicated that it was about to issue a decision unfavorable to the debtor. The bankruptcy court found that the petition had been filed in bad faith and granted the would-be purchaser's motion for relief. The district court affirmed as did the Eleventh Circuit Court of Appeals. 871 F.2d at 1025-26.

In <u>Chinichian</u>, the debtors entered into a contract to sell a house, which they later attempted to rescind. The buyer sued them for specific performance in state court. Shortly before the

---

[3]The Ortegas also ostensibly based their motion for relief on 11 U.S.C. § 362(d)(2). However, under this prong, they were required to prove that the Debtor had no equity in the Property. The Ortegas made no attempt to establish this prong at the final hearing on their motion. Therefore, relief from stay will not be granted on the basis of 11 U.S.C. § 362(d)(2).

6

scheduled trial, the debtors filed a bankruptcy petition. After some months, the case was dismissed, and the state court trial reset. The debtors filed a second bankruptcy petition on the eve of trial. In their plan, they attempted to reject the sale contract. The bankruptcy court ultimately declined to confirm the plan with this provision in it, concluding that the plan had been filed in bad faith. 784 F.2d at 1441-42.

The bankruptcy court's decision was affirmed by the district court and the Ninth Circuit Court of Appeals. In its decision, the Ninth Circuit noted that the district court found to be further evidence of the debtors' bad faith "the strategic timing of the ...[debtors'] bankruptcy petitions, which effectively frustrated enforcement of the contract in state court...." 784 F.2d at 1445. This decision was affirmed by the district court and later by the Ninth Circuit Court of Appeals.

Unlike the debtors in the two cases cited by the Ortegas, the Debtor does not appear to have been a bad actor in his pre-petition dealings with the Ortegas. To the contrary, the Ortegas appear to have acted in bad faith, first by breaching the Contract by placing secured debt on the Property and second by refusing to cooperate in the recordation of the Contract after the Judgment ordered them to do so. Nevertheless, the "strategic timing" of the Debtor's bankruptcy petition frustrated the resolution of his dispute with the Ortegas in state court. Eve-of-trial bankruptcy filings are universally disfavored.

7

The Ortegas also contend that the Plan was filed in bad faith and is not feasible. The Court agrees. The Debtor's only income at present is his putative spouse's unemployment compensation. The payments of $150 per month to the chapter 13 trustee for 35 months would serve only to pay the chapter 13 trustee's fees and a minimal amount of attorney's fees to the Debtor's counsel. The Plan does not propose to make any payment to the unsecured creditors until the 36th month from an uncertain source. It proposes no payments to the Ortegas for the purchase of the Property until the Debtor's litigation with them is resolved. The Court is unlikely to confirm such a plan.

The Debtor contends that, now that he has filed, his interest in the Property is property of the estate. Accordingly, his disputes with the Ortegas should be tried here. The Court disagrees. The Debtor's disputes with the Ortegas are governed by state law and can be promptly litigated in state court. Congress has expressed a strong preference that such claims be tried in state court. See 28 U.S.C. § 1334(c)(1),(2).

The Debtor also contends that he filed his bankruptcy case in good faith. He notes that, in determining whether a bankruptcy case has been filed in bad faith, the Court is required to consider the totality of the circumstances. See Matter of Little Creek Dev. Co., 779 F.2d 1068 (5th Cir. 1986); In re Thirtieth Place, Inc., 30 B.R. 503, 505 (Bankr. 9th Cir. 1983). He argues that the actions that the Ortegas characterize as bad faith were simply his "increasingly desperate attempts to preserve possession of the Property..." and to

8

have the Title Action tried before the Ejectment Action. Bad faith may be subjective or objective. The Court is persuaded that the Debtor did not file for bankruptcy with subjective bad faith. His desire to preserve possession of the Property is understandable. However, the "strategic timing" of the filing renders it in bad faith on an objective basis. Moreover, if the Debtor's attorney was willing to accept payment for handling litigation of these disputes in bankruptcy court at the rate of less than $150 per month, he would presumably be willing to do so if the litigation occurs in state court.

Counsel for the Ortegas is directed to submit a proposed form of order granting relief from the automatic stay to permit the Ejectment Action to proceed to final judgment only.

END OF DOCUMENT

COURT SERVICE LIST

Darya Sara Druch
Law Offices of Darya Sara Druch
1 Kaiser Plaza #480
Oakland, CA 94612

Samuel E. Goldstein
Samuel E. Goldstein and Assoc.
1777 Botelho Dr. #345
Walnut Creek, CA 94596

Joshua D. Brysk
Law Offices of James G. Schwartz
7901 Stoneridge Drive, Ste. 401
Pleasanton, CA 94588